UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZANE HUBBARD,<br><br>    Plaintiff,<br><br>    v.<br><br>C. GIPSON, et al.,<br><br>    Defendants. | CASE NO. 1:14-cv-00275-LJO-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION WITH PREJUDICE FOR FAILURE TO STATE A CLAIM**<br><br>**(ECF No. 9)**<br><br>**OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983.

The Court screened Plaintiff's complaint (ECF No. 1), and dismissed it for failure to state a claim, but gave leave to amend. (ECF No. 7.) Plaintiff since has filed a first amended complaint (ECF No. 9) which is before the Court for screening. Plaintiff's complaint also requests consolidation of this action with Case No. 1:14-cv-00042-AWI-JLT.

**I.     THE COMPLAINT**

    **A.     Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C.

§ 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.   Pleading Standard**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are

2

accepted as true, legal conclusions are not. Id. at 677-78.

### C.     Plaintiff's Allegations

Plaintiff initially complained of acts that occurred during his incarceration at Corcoran State Prison ("CSP"). His initial complaint named as Defendants: (1) Gipson, (2) T. Drew, (3) CSP Superintendent, (4) Lt. Peña, (5) Hall, (6) T. King, and (7) Aceves. The complaint alleged that Defendants, motivated by discrimination against Plaintiff, conspired to torture him by using illegal electroconvulsive therapy, and that his Privacy Act right and copyrights were violated by Defendants' broadcasting his artwork, song lyrics, social security and "other personal material" at CSP.

Plaintiff's first amended complaint substantially expands on these allegations and adds numerous new claims and defendants. The first amended complaint names the following 37 Defendants: (1) Connie Gipson, CSP Warden; (2) T. Drew, Institutional Gang Investigator ("IGI") Lieutenant at Wasco State Prison ('WSP"); (3) Rawland K. Swift, CSP Chief Deputy Warden; (4) S. Pena, CSP IGI Lieutenant; (5) Aceves, WSP Correctional Sergeant; (6) T. King, Deputy Gang Sheriff at Kern County Sheriff's Detention Center; (7) J. Pierce, CSP IGI; (8) J.C. Garcia, CSP IGI Lieutenant; (9) D. Gonzalez, WSP Correctional Officer; (10) M. Gonzalez, CSP Correctional Officer; (11) J.C. Smith, CSP Chief Deputy Warden; (12) C. Rodriguez, WSP Assistant IGI; (13) L.J. Williams, CSP Correctional Officer; (14) Graves-Banks, CSP Correctional Counselor I; (15) Flores, CSP Correctional Officer; (16) Hirachetta, CSP Correctional Officer; (17) Mendez, CSP Correctional Sergeant; (18) Brian, CSP Correctional Officer; (19) Chavez, CSP Correctional Officer; (20) R. Viramontes, SNY Correctional Informant at CSP; (21) T. Perez, CSP Chief Deputy Warden; (22) De Ochoa, CSP Correctional Sergeant, (23) Kellogs, CSP Correctional Sergeant; (24) Arthuro Estrada, CSP inmate; (25) Carlos Contreras, CSP inmate; (26) Stanley "Tuki" Williams, CSP inmate; (27) Black Mike from Compton, CA, CSP inmate; (28) Tony Christian, CSP inmate; (29) Richard Silvas, CSP Inmate; (30) Barry, CSP inmate; (31) Antonio Hinojosa, CSP Inmate; (32) Uribe, Folsom

1  State Prison ("FSP") Inmate; (33) Vargas, FSP Inmate; (34) Fradieu, FSP Inmate; (35)
2  Woods, CSP Nurse; (36) Richard Arambulo Leuvano Thomas, Parolee in Bakersfield;
3  and (37) Michael Moreno, Ex-Felon.
4      Plaintiff's allegations are difficult to understand but generally appear to complain
5  of two specific aspects of Defendants' conduct.
6      First, Plaintiff alleges that various defendants are using illegal electroconvulsive
7  therapy, psychosurgery, lobotomy, stereotactic surgery, deconstruction of brain tissue,
8  electronic stimulation to the brain, and "galvanization" against him. According to Plaintiff
9  this conduct has two purposes: (1) to brainwash him so he will "debrief" on other
10 inmates, drop out of a gang, incriminate himself, and become law enforcement; and
11 (2) to obtain information regarding Plaintiff's identity, "birthrights," and privacy, and
12 broadcast it to the Sensitive Needs Yard ("SNY") population, law enforcement, and the
13 nation.
14     Second, Plaintiff alleges that he is "abnormally classified." Plaintiff appears to take
15 issue with his placement in the CSP Security Housing Unit ("SHU"). Plaintiff states that
16 the SHU at CSP and FSP is only for SNY debriefers and gang dropouts. Plaintiff is a
17 Mexican Mafia associate and therefore incompatible with SNY inmates. He wishes to be
18 placed in a general population SHU. Housing him at CSP is "torture." He believes he is
19 being held there until he debriefs or informs. He has been placed in the "step down"
20 program against his will, and is being forced to debrief and drop out, or to be kept in
21 solitary confinement. Plaintiff also alleges he was validated as a gang member based on
22 his race.
23     Plaintiff also raises numerous other general allegations: His due process rights
24 have been "eradicated." His health and safety are in constant danger. He is unlawfully
25 confined and is being excessively punished. Unspecified individuals are impinging on
26 Plaintiff's copyrights by exposing the contents of his creative art. Plaintiff's conviction is
27 unlawful. His gang validation is unconstitutional. His housing is unconstitutional. The
28

4

conditions of his confinement are unconstitutional. He is suffering from "incompatible activity."

Plaintiff's specific allegations are as follows.

Plaintiff was in solitary confinement at CSP from December 26, 2013 through February 10, 2014. False documents stating Plaintiff had enemy concerns with the Mexican Mafia were presented to the Committee that assigned him to solitary. These documents concerned an altercation Plaintiff had with his cell mate, who was a Mexican Mafia dropout. Plaintiff is a Mexican Mafia associate. He has enemy concerns with the CSP SNY population and FSP SHU population. SNY inmates worked with California Department of Corrections and Rehabilitation ("CDCR") employees to falsify enemy concerns against him for discriminatory reasons. Plaintiff appealed his assignment to solitary. Defendant Azevedo denied his appeal at the first level. Defendant Smith "eradicated the contents of the appeal" at the second level but "granted the entire appeal." Nevertheless, Plaintiff was not afforded any relief.

On February 9, 2014, Defendants Gipson, Swift, Garcia, Perez, L.J. Williams, Hirachetta, De Ochoa, Rodriguez, and Kellogs used electroconvulsive therapy and threatened to kill Plaintiff if he did not enter protective custody and debrief or inform on others. Plaintiff filed a CDCR Form 22 to Defendants Swift and Gipson regarding this incident. Swift and Gipson did not respond.

Defendant Pena also used electroconvulsive therapy and threatened to kill Plaintiff because Plaintiff had seen Defendant Pena engaged in illegal activities while Plaintiff was on parole. Plaintiff filed a CDCR Form 22 to Defendants Swift and Gipson regarding this incident. Swift and Gipson did not respond.

Defendants Pena, Garcia, Perez, L.J. Williams, Hirachetta, De Ochoa, Rodriguez, Kellogs, Estrada, Contreras, Stanley "Tuki" Williams, Black Mike, Uribe, Vargas, Fradieu and Walls told Plaintiff they were going to kill him because they are SNY gangsters and

5

1  Plaintiff is not a dropout or a debriefer. Plaintiff filed a Form 22 to Defendant Gipson or
2  Swift alleging that he was in fear for his life. Gipson and Swift did not respond.

3        On February 19, 2014, Plaintiff filed a Form 602 complaint alleging that he feared
4  for his life. He complained that inmates and staff had threatened to kill him at CSP and
5  FSP. The inmates and employees told him they were SNY gangsters and were going to
6  kill him because he would not drop out. They also told him he was housed in CSP out of
7  discrimination on the hope that he would contract Valley Fever. Defendant Azevedo
8  denied his appeal at the first level. Defendant Smith denied his appeal at the second
9  level. Defendant Briggs denied his appeal at the third level, causing Plaintiff to "suffer an
10 additional 60 days."

11       From June 1, 2013 to April 10, 2014, Defendants Pierce, Pena, and Garcia
12 threatened to kill him, sodomize him, kidnap him, sexually assault him, and put him in
13 SNY. They also falsified documents against him. Defendants C. Gonzalez, M. Gonzalez,
14 and Gipson "concurred."

15       Defendants Smith, Gipson, Swift, Pena, Garcia, and Pierce housed him with
16 dropout debriefers "in a Blackhawk down" situation.

17       On April 1, 2014, Defendants Drew, Rodriguez, and L.J. Williams sexually
18 harassed Plaintiff through electroconvulsive therapy, made sexual comments to him, and
19 threatened to kill him, slander him, and expose his identity.

20       On February 2, 2013, Defendant Graves-Banks illegally confiscated a
21 resentencing notice and withheld Plaintiff from sentence modification.

22       On June 9, 2013, Defendant Flores and Hirachetta gave Plaintiff two used
23 unmarked razors to shave with, which is a health and safety hazard.

24       On May 1, 2013, Defendants Mendes, Brian and Chavez housed him with Inmate
25 Viramontes, resulting in the altercation that led to Plaintiff's solitary confinement.

26       Plaintiff seeks a declaratory judgment that his due process rights were violated; a
27 permanent injunction against his placement at CSP, FSP, or in the step down program;
28

6

transfer out of CSP; expungement of the falsified safety concerns; a return to double cell status; and money damages.

### D. Analysis

#### 1. Unrelated claims

Fed. R. Civ. P. 18(a) states: "A party asserting a claim, counterclaim, cross-claim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees – for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)); see also Fed. R. Civ. P. 20(a)(2) ("Persons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences . . . .")

Plaintiff's initial complaint alleged that Defendants Gipson, Drew, Pena, Hall, King, Aceves, and an unnamed Superintendent conspired to torture Plaintiff with electroconvulsive therapy out of discrimination, and violated his Privacy Act rights and copyrights. Plaintiff was advised in the Court's prior screening order that he would not be permitted to change the nature of this suit by adding new, unrelated claims in his amended complaint. (ECF No. 7.)

Nevertheless, Plaintiff's first amended complaint alleges numerous unrelated claims. Plaintiff's allegations regarding his classification and housing placement, attempts to encourage him to debrief, his validation as a gang associate, threats against him due to his gang association, the confiscation of his resentencing notice, and his

bar
7

being given used razors, bear no apparent relation to his original claims regarding electroconvulsive therapy, Privacy Act rights, and copyrights. The Court also notes that Plaintiff has raised several of these claims in prior actions. See, e.g., Hubbard v. Corcoran State Prison, No. 1:13-cv-01736-AWI-MJS (PC) (classification and housing decisions, gang validation); Hubbard v. Corcoran State Prison, No. 1:13-cv-01511-AWI-MJS (confiscation of resentencing notice);

These claims do not arise out of the same transaction, occurrence, or series of transactions and occurrences. They may not be joined in this action. If Plaintiff wishes to pursue these allegations, he must do so in a separate suit. The Court will not address whether these allegations state a cognizable claim, and will recommend that these claims be dismissed.

### 2. Excessive Force

The Cruel and Unusual Punishment Clause of the Eighth Amendment protects prisoners from the use of excessive physical force. Wilkins v. Gaddy, 559 U.S. 34, 36 (2010); Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). To state an Eighth Amendment claim, a plaintiff must allege that the use of force was an "unnecessary and wanton infliction of pain." Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Hudson, 503 U.S. at 9.

Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries).

Whether force used by prison officials was excessive is determined by inquiring if

the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7. The Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. See Whitley v. Albers, 475 U.S. 312, 321 (1986).

Plaintiff's complaint contains three allegations of excessive force involving electroconvulsive therapy. First, on February 9, 2014, Defendants Gipson, Swift, Garcia, Perez, L.J. Williams, Hirachetta, De Ochoa, Rodriguez, and Kellogs used electroconvulsive therapy and threatened to kill Plaintiff if he did not debrief or inform on others. Second, in an undated incident, Defendant Pena used electroconvulsive therapy and threatened to kill Plaintiff because Plaintiff had seen Defendant Pena engage in illegal activities. Lastly, on April 1, 2014, Defendants Drew, Rodriguez, and L.J. Williams used electroconvulsive therapy and made sexually harassing comments to Plaintiff and threated to kill him.

Allegations that defendants used electroconvulsive therapy, psychosurgery, lobotomy, stereotactic surgery, deconstruction of brain tissue, electronic stimulation to the brain, and "galvanization" against Plaintiff are so implausible, outlandish, and far-fetched as not to be believed. See Nietzke v. Williams, 490 U.S. 319, 327-28 (1989) (section 1915(d) accords judges the authority to "pierce the veil of the complaint's factual allegations" and dismiss claims "describing fantastic or delusional scenarios"). The Court will recommend that these claims be dismissed.

### 3. Privacy Rights and Copyrights

Plaintiff generally alleges that unspecified individuals are impinging on his copyrights by exposing his creating art, and are attempting to obtain his personal information to broadcast it to others.

9

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff has not linked any named defendants to his privacy and copyright claims. He was advised of this deficiency in the Court's prior screening order, but failed to correct it. No useful purpose would be served by permitting Plaintiff a further opportunity to amend these claims.

### 4. Declaratory Relief

In addition to damages, Plaintiff seeks declaratory relief, but because his claims for damages necessarily entail a determination whether his rights were violated, his separate request for declaratory relief is subsumed by those claims. Rhodes v. Robinson, 408 F.3d 559, 566 n.8 (9th Cir. 2005). Therefore, Plaintiff's claim for declaratory relief should be dismissed.

### E. Conclusion

Plaintiff has not stated any cognizable claims against any defendants. The Court will recommend that Plaintiff's first amended complaint be dismissed with prejudice.

### III. REQUEST TO CONSOLIDATE

Federal Rule of Civil Procedure 42(a) permits the court to consolidate actions

involving a common question of law or fact, and consolidation is proper when it serves the purposes of judicial economy and convenience. "The district court has broad discretion under this rule to consolidate cases pending in the same district." Investors Research Co. v. United States District Court for the Central District of California, 877 F.2d 777 (9th Cir. 1989). In determining whether to consolidate actions, the court weighs the interest of judicial convenience against the potential for delay, confusion, and prejudice caused by consolidation. Southwest Marine, Inc., v. Triple A. Mach. Shop, Inc., 720 F. Supp. 805, 807 (N.D. Cal. 1989).

Plaintiff seeks to consolidate Case No. 1:14-cv-00042-AWI-JLT with the instant action. Plaintiff argues that the claims in both cases are related, but does not explain the alleged relationship between the two cases or how consolidation would result in economy and convenience. The Court in Case No. 1:14-cv-00042-AWI-JLT has ordered Plaintiff to show cause why that action should not be dismissed, and it appears the Court has concluded that the action is barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Accordingly, consolidation of the actions would be impractical at this stage of the proceedings.

Based on the foregoing, it is recommended that Plaintiff's request to consolidate be denied.

**IV.     CONCLUSION AND RECOMMENDATION**

Plaintiff's first amended complaint fails to state any cognizable claim. He previously was advised of pleading deficiencies and afforded the opportunity to correct them. He failed to do so. No useful purpose would be served by once again advising Plaintiff of those deficiencies and giving him yet another chance to correct them. Further leave to amend should be denied.

The undersigned recommends that the action be dismissed with prejudice, that dismissal count as a strike pursuant to 28 U.S.C. § 1915(g), and that the Clerk of the Court terminate any and all pending motions and close the case.

The Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   October 30, 2014         /s/ *Michael J. Seng*
                                  UNITED STATES MAGISTRATE JUDGE